IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY M. RUFO, et al., *Plaintiffs,*<br><br>v.<br><br>JUDGE IDEE C. FOX, et al., *Defendants.* | CIVIL ACTION<br>NO. 21-2861 |

**PAPPERT, J.**                                                                                      November 18, 2021

## MEMORANDUM

Plaintiffs Anthony Rufo and 325 S. 18th Street, LLC challenge the validity of Pennsylvania's Abandoned and Blighted Property Conservatorship Act (Act 135), 68 Pa. Stat. §§ 1101-1111, and its impact on the property at 325 S. 18th Street in Philadelphia. The property was placed in an Act 135 conservatorship in the still-pending state court matter of *Walsh, et al. v. Isabella, et al.,* No. 160504133 (Phila. Ct. Comm. Pl.). Plaintiffs sued Common Pleas Court Judges Idee Fox and Kenneth Powell, Jr., Orphanides & Toner, LLP, Paul J. Toner, David Champagne and the Philadelphia Community Development Coalition, Inc. (PCDC).[1] Defendants move to dismiss the claims against them. (*See* ECF 21 (Fox and Powell Mot.); ECF 15 (PCDC, et al. Mot.).) The Court grants their motions.

I

Act 135 provides

> [i]f the owner of a residential, commercial or industrial building fails to maintain the property in accordance with applicable municipal codes or

---

[1] The Court previously dismissed Plaintiffs' claims against Pennsylvania Attorney General Josh Shapiro. (ECF 28.)

> standards of public welfare or safety, it is in the best interest of the Commonwealth, the municipality and the community for the court, pursuant to the provisions of this act, to appoint a conservator to make the necessary improvements before the building deteriorates further and necessitates demolition, resulting in the removal of the building from the housing supply or prohibiting future productive economic use.

68 Pa. Stat. § 1102(6). Conservatorship actions are meant to "provide a mechanism to transform abandoned and blighted buildings into productive reuse . . . ." *Id.* § 1102(5)(2).

Upon a petition to the state court and after a hearing, Act 135 permits the state court to order the appointment of a conservator if certain conditions are met. *Id.* § 1105. Thereafter, it may "certify the schedule of encumbrances and grant such other relief as may be just and appropriate." *Id.* § 1105(e)(1). It may order termination of a conservatorship upon "request of a party in interest or the conservator" after certain enumerated conditions are met, including that "the conditions that were the grounds for the petition and all other code violations have been abated or corrected," that the "owner . . . has provided adequate assurances to the court that the conditions that constituted grounds for the petition will be promptly abated," or that "the building has been sold by the conservator and the proceeds distributed" as required by the Act. *Id* § 1110.

A

Plaintiffs' claims arise from the Act 135 proceeding that placed 325 S. 18th Street in a conservatorship. (*See* Compl., ECF 1, ¶ 2.) Rufo purchased the property from Theresa Isabella on April 28, 2017, after the conservatorship was in place. (*Id.* ¶¶ 3-4.) PCDC was appointed as the property's conservator after a May 2, 2017 hearing in the Court of Common Pleas. (*See* PCDC App'x, ECF 18 at ECF p. 21 (May 17, 2017

docket entry for Order in *Walsh v. Isabella*, No. 16054133 (Phila. Ct. Comm. Pl.).) Since then, Plaintiffs have mounted repeated unsuccessful challenges to the imposition of the conservatorship. (*See, e.g.*, *id.*, at ECF p. 22-23 (June 27, 2017 docket entry for Mot. for Reconsid. of May 17, 2017 Order); *id.* at ECF p. 24 (June 6, 2017 docket entry for Mot. to Stay May 17, 2017 Order); *id.* at ECF p. 28 (June 27, 2017 docket entry for Mot. to Strike the conservatorship); *id.* at ECF p. 17-18 (March 5, 2018 docket entry for Notice of App. from February 5, 2018 decision denying the motion to strike the conservatorship); *see also Walsh v. Isabella*, 258 A.3d 1163, 2021 WL 2580603, at *1 (Pa. Commw. Ct. Jun. 23, 2021) (describing continued litigation over the conservatorship).) To date, Plaintiffs have not given the state courts a reason to terminate the conservatorship in accordance with Section 10 of Act 135. *See* 68 Pa. Stat. § 1110.

In the meantime, PCDC has worked to remediate the property with preparation and implementation of an Act 135 Final Plan. On March 19, 2021, Judge Powell entered an order authorizing PCDC to list the property for sale for $1,400,00.00.[2] (PCDC App'x, ECF 18 at ECF p. 106-07 (March 19, 2021 Docket Entry).) In a separate order that day, Judge Powell also granted PCDC's motion for an appeal bond and required 325 S. 18th Street to post a $1,451,397.99 bond as security in the event it sought to delay a sale through further appeals. (*Id.* at ECF p. 109 (March 30, 2021 Docket Entry for "ORDER 537").)

---

[2]   On March 22, 2021, Judge Powell entered an amended order finding 325 S. 18th St. LLC no longer blighted or abandoned, ordering the conservator to place a conservator's lien on the property, and terminating the conservatorship. (PCDC App'x, ECF 18 at ECF p. 107 (March 23, 2021 Docket Entry).) That order was vacated on March 29, 2021. (See *id.* at ECF p. 109 (March 30, 2021 Docket Entry for "ORRDER 553").)

325 S. 18th Street appealed the March 19, 2021 orders. *See Walsh v. Isabella* (Pa. Commw. Ct. No. 336 CD 2021). Applying Pennsylvania Rule of Appellate Procedure 311, the Commonwealth Court quashed the appeal on October 1, 2021 "because the orders do not confirm, modify, dissolve, or refuse to confirm, modify, or dissolve the conservatorship." (*Id.* (October 1, 2021 Dkt. Entry).) The Commonwealth Court explained it "is clear that the trial court's orders do not dispose of all claims and all parties" and "were neither entered as final orders by the trial court nor did [325 S. 18th St.] seek a determination of finality." (*Id.*) The conservatorship thus remains active.

B

In their 304-paragraph Complaint, Plaintiffs, who are represented by counsel, allege Defendants engaged in a litany of nefarious actions during the initiation and implementation of the court-ordered conservatorship. They contend "court, conservator and counsel repeatedly execute a pattern and practice of Pillaging Properties for the Privileged under the guise of" Act 135. (Compl., ECF 1, ¶ 33 (emphasis omitted).) Plaintiffs accuse Defendants of conspiring to "extort" them by holding the property for a $300,000.00 "ransom" and demanding in excess of $1,000,000 for the property's release. (*Id.* ¶ 71.)

They sue Judge Fox, the current President Judge of the Philadelphia Court of Common Pleas, in her "personal capacity." (Compl., ECF 1, ¶ 94.) They allege she "was responsible for judicial supervision, assignments, training and discipline of . . . Philadelphia Court of Common Pleas judges who conspired with [her] to deprive Plaintiffs of their civil rights . . . ." (*Id.*) They assert she "personally 'tapped' [Judge Powell], a judge with absolutely no Act 135 knowledge or experience, to take over

Plaintiffs' case" after another judge recused herself from the underlying litigation.  (*Id.* ¶ 112.)  They also allege Judge "Powell worked with [Judge] Fox to prevent Plaintiffs' access to the rights afforded under Act 135, all while denying Plaintiffs' access to the [property] and a fair hearing."  (*Id.* at ¶ 124.)

Plaintiffs also sue PCDC, its corporate officer Champagne, its lawyer Toner and law firm Orphanides & Toner.  (*See, e.g., id.* at ¶¶ 136-39, 154, 165.)  Among other things, they contend Defendants "illegally padded bills in connection with the purported 'remediation' of Plaintiffs' property" and, "aided and abetted by" Judge Fox, Judge Powell and "other selected jurists and various city agencies . . ." "work in concert to usurp equity or steal property without just compensation . . . ."  (*Id.* ¶¶ 142 (emphasis omitted), 145.)

Plaintiffs allege Act 135's provisions violate their constitutional rights and claim the statute permits private individuals and entities to "take private property without just compensation and in derogation of due process and equal protection under the law."  (*Id.* ¶ 1; *see also id.* ¶¶ 8-9.)  They seek a declaratory judgment "to address and abate the grievous injuries caused by the Pennsylvania Legislature's illegitimate and excessive delegation of power – Act 135 – that continues to deprive [them] and others similarly situated[3], of the due process, equal protection and right to life, liberty and property secured and guaranteed by the United States Constitution."  (Compl., ECF 1, ¶¶ 249, 261 (emphasis omitted).)  They also seek injunctive relief restoring their alleged "*status quo ante* by enjoining any further act of the First Judicial District or appellate

---

[3]     Despite the Complaint's references to "similarly situated" others (*see* Compl., ECF 1, ¶¶ 63, 134, 249, 261), the only Plaintiffs are Rufo and 325 S. 18th St.  They have not filed a class action.

5

courts . . . ." (*Id.* at ¶ 268.)  In addition, Plaintiffs assert claims for fraud, breach of fiduciary duty and violation of the Racketeer Influenced and Corrupt Organizations Act against PCDC, Champagne, Orphanides & Toner and Toner.  (*Id.* ¶¶ 279-288 (Fraud); *id.* ¶¶ 289-293 (breach of fiduciary duty); *id.* ¶¶ 294-300 (RICO).)  Finally, they seek to "pierce the corporate veil," alleging "PCDC is merely David Champagne's alter ego" and Champagne, Orphanides & Toner and Toner use the entity "as a vehicle to execute the Fraud and RICO activity" they allege.  (*Id.* ¶¶ 301-304.)

## II

### A

A court must dismiss any claims over which it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Motions invoking Rule 12(b)(1) generally fall into two categories:  facial attacks and factual attacks.  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'"  *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and [ ] requires the court to 'consider the allegations of the complaint as true.'"  *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  Judge Fox and Judge Powell raise a facial jurisdictional challenge to Plaintiffs' claims.

### B

To satisfy Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the Complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (quoting *Connelly*, 809 F.3d at 786-87).

To decide a motion to dismiss without converting it into a summary judgment motion, courts consider only the Complaint's allegations, matters of public record and, where appropriate and necessary, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  A plaintiff's claims are based on a document if it is "integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.*,114 F.3d 1410, 1426 (3d Cir. 1997) (emphases omitted).  Lack of notice, "the primary problem raised by looking to documents outside the complaint," is absent when

a plaintiff has actual notice of the documents and its pleading relies on them. *Id.*

III

A

Judges Fox and Powell argue the Court lacks jurisdiction over Plaintiffs' claims because "the relief sought is in the nature of appellate review" of state court judgments. (Fox and Powell Br., ECF 21 at 16.) They argue the *Rooker-Feldman* doctrine bars Plaintiffs' claims "because the Court would have to rule that underlying orders in the state case were erroneously entered." (*Id.* at 18.) "Under the *Rooker–Feldman* doctrine . . . the federal court lacks subject matter jurisdiction[ ] if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006). The doctrine applies where four requirements are met: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).

*Rooker-Feldman* does not bar Plaintiffs' claims because at least one of these requirements – that a state court judgment was rendered before the federal suit was filed – is not met. *Rooker-Feldman* is not applicable "when state proceedings have neither ended nor led to orders reviewable by the United States Supreme Court." *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 460 (3d Cir. 2019). None of the orders in the conservatorship action are "final judgments" and none have "finally resolved all the federal questions in the litigation" or otherwise satisfied the requirements of practical finality. *Id.* at 461.

8

B

Judges Fox and Powell and PCDC, Champagne, Orphanides & Toner and Toner also argue the Court should abstain from hearing Plaintiffs' claims pursuant to the *Younger* abstention doctrine. (Fox and Powell Br., ECF 21 at 19-20; PCDC, et al. Br., ECF 15-1 at 12-14.) *Younger* abstention is not a jurisdictional question. *Hamilton v. Bromley*, 862 F.3d 329, 334 (3d Cir. 2017). It gives the court discretion to abstain from exercising jurisdiction where appropriate "(1) to promote comity, a proper respect for state functions, by restricting federal courts from interfering with ongoing state judicial proceedings and (2) to restrain equity jurisdiction from operating when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm." *PDX North, Inc. v. Commissioner N.J. Dep't of Labor and Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (internal quotation and citations omitted). It is an exception to the rule that federal courts have a "virtually unflagging" obligation to hear and decide a case and applies only "when certain types of state proceedings are ongoing at the time a federal case is commenced." *Id.* (citations omitted).

Defendants argue *Younger* abstention is appropriate because there are (1) ongoing state proceedings that are judicial in nature; (2) implicating important state interests; and (3) affording an adequate opportunity to raise federal claims. (*See* Fox and Powell Br.*,* ECF 21 at 19-20; PCDC, et al. Br., ECF 15-1 at 12-13.) Their arguments rely on factors outlined in *Middlesex County Ethics Committee v. Garden State Bar Association*. 457 U.S. 423, 432 (1982). However, after *Sprint Communications, Inc. v. Jacobs*, the *Middlesex* factors are "not dispositive." 571 U.S. 69, 81 (2013). *Younger* abstention is only appropriate in three types of underlying state cases: (1) criminal prosecutions; (2) civil enforcement proceedings; and (3) civil

proceedings involving orders in furtherance of the state courts' ability to perform their judicial function. *Id.* at 70. "[T]he *Middlesex* factors are only relevant in assessing whether *Younger* abstention is proper after a court identifies one of the three categories of proceedings identified in [*Sprint*]." *Hamilton*, 862 F.3d at 337; *see also Malhan*, 938 F.3d at 462 ("[W]e have stressed several times since [*Sprint*] that the three *Middlesex* conditions are no longer the test for *Younger* abstention.") (citation and internal quotations omitted). As the Supreme Court explained, *Middlesex's* factors cannot be "[d]ivorced from their quasi-criminal context" because to do so "would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." *Sprint*, 571 U.S. at 81.

As for the *Sprint* categories, Plaintiffs' claims do not involve a criminal prosecution. And Plaintiffs' case does not challenge a proceeding "akin to a criminal prosecution in important respects." *Id.* at 79 (citation and internal quotations omitted). "Civil enforcement actions that trigger *Younger* are typically brought by state actors and involve official investigations and formal complaints or charges," which is not the case here. *Wells Fargo Bank, N.A. v. Carnell*, No. 16-130, 2017 WL 1498087, at *5 (W.D. Pa. Apr. 25, 2017).

The issue is whether Plaintiffs' claims fall into the third category of abstention-worthy disputes. "Orders of that type are very much 'unique[ ].'" *Malhan*, 938 F.3d at 463 (quoting *Sprint*, 571 U.S. at 70).) This category recognizes states' important interests in "administering certain aspects of their judicial systems" and "enforcing the orders and judgments of their courts." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13 (1987). It "has been applied only to a few exceptional types of cases . . . such as child custody proceedings, civil contempt orders, and requirements for posting bonds pending

10

appeal." *Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1094 & nn.73-74 (E.D. Pa. 2017) (collecting cases).

The circumstances here are unique. Plaintiffs seek a favorable federal court judgment they can use to hinder the Common Pleas Court's ability to perform its judicial function in the conservatorship action. They request a declaration that Act 135 is void or that its definition of a "party in interest" is "facially unconstitutional" and an injunction barring "any further act of the First Judicial District or appellate courts" against them. Their challenges implicate the state court's ability even to order and administer an Act 135 conservatorship. (Compl., ECF 1, ¶¶ 246-249, 250, 268.) Allowing Plaintiffs' claims to proceed would necessarily interfere with the state court's ability to perform its legislated judicial function in the Act 135 proceeding: determining whether to place a property into a conservatorship, as it did in this case, and the subsequent administration of the court-ordered conservatorship. *See* 68 Pa. Stat. §§ 1105-1106, 1108-1110. "[T]he prospect of undue interference with state proceedings counsels against federal relief." *Sprint*, 571 U.S. at 72.

Abstention is also supported by the *Middlesex* factors. The conservatorship action is an ongoing state judicial proceeding. It implicates important state interests, i.e. remedying "substandard, deteriorating and abandoned commercial and industrial structures [that] are a public safety threat and nuisance and their blighting effect [that] diminishes property values" and protecting against "increased costs to the Commonwealth, municipality and taxpayers to secure and ultimately demolish them." 68 Pa. Stat. § 1102(3)-(4). "Zoning and land use issues are of traditional significance to states." *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 409 (3d Cir. 2005). Plaintiffs can raise their claims and obtain relief in the state proceedings

11

notwithstanding their conclusory allegations that Pennsylvania's courts, in an "unholy alliance" with the bar are "aiding and abetting" Defendants in operating "an extremely profitable" Act 135 "Petition Mill." (*See* Compl., ECF 1, ¶¶ 52-56 (emphasis omitted).) Indeed, they have already sought similar relief in state court, "a telling signal to this Court that it should abstain." *Shallenberger v. Allegheny Cnty.*, No. 20-73, 2020 WL 1465853, at *9 (W.D. Pa. Mar. 26, 2020). (*See, e.g.*, PCDC App'x, ECF 20 at ECF p. 15-20 (September 26, 2018 Opinion of Judge Powell (OPFLD_289.pdf) (addressing Plaintiffs' argument that Act 135 is unconstitutional).)

C

Even if *Younger* abstention were not warranted, Plaintiffs could not proceed with their claims against Judge Powell or Judge Fox. "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (quoting *Mireles v. Waco*, 502 U.S. 9, 9 (1991).) "Erroneous, controversial, and even unfair decisions do not divest a judge of immunity." *Trinh v. Fineman*, 9 F.4th 235, 238 (3d Cir. 2021) (citation omitted). This "immunity extends to all judicial decisions, unless they were taken in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

Plaintiffs argue the judicial defendants were "not acting in a judicial capacity" and are not immune because they were "working to advance specific legislation." (Pls.' Br., ECF 32-1 at 12.) They point generally to their Complaint, where they allege Judge Fox "attended an Act 135 Continuing Legal Education . . . Seminar sponsored by" Orphanides & Toner," and maintain her participation in the CLE evidences her "inordinate affiliation" with PCDC and the law firm. (Compl., ECF 1 at ¶¶ 104, 106.) Without factual support, they allege she "hand-selected jurists to promote Act 135 and

to assist [PCDC, Orphanides & Toner] and other conservators and counsel in successfully initiating, executing and pursuing Act 135 actions" and identify her as "the sustaining judicial power behind Defendants' abuse of Act 135 and the resulting financial 'windfalls.'" (*Id.* ¶ 115.) They also allege, again with no facts to back it up, that Judge Powell worked with the other Defendants "to impede Plaintiffs' access to a fair hearing . . . from the inception" of his involvement in their case. (*Id.* ¶ 122.) These are all conclusory allegations which merit no weight. Plaintiffs' allegations of extra-judicial conduct lack the factual support required to allow the Court to draw the reasonable inference that either judicial defendant acted outside of their judicial capacity or acted in the absence of jurisdiction. They are immune from suit to the extent Plaintiffs seek to recover money damages.

In certain circumstances, "a judge who acts as an enforcer or administrator of a statute can be sued under Section 1983 for declaratory or (if declaratory relief is unavailable) injunctive relief." *Allen v. DeBello*, 861 F.3d 433, 440 (3d Cir. 2017). But those circumstances are not present in this case. A judge who sits as a "neutral adjudicator" and not an "enforcer[ ] or administrator[ ]" is an "improper defendant[ ] to a suit for declaratory relief challenging the constitutionality of [a] statute." *Id*. at 441. Judge Powell has "no personal or institutional stake on either side" of the conservatorship litigation, played no role in Act 135's enactment, and did not initiate the state court proceedings. *Malhan v. Katz*, 830 F. App'x 369, 370 (3d Cir. 2020). He has not been delegated administrative functions and is not in a position adverse to the Plaintiffs. *Id.* They challenge actions Judge Powell undertook in an adjudicative capacity and he is not a proper defendant for their claims for declaratory or injunctive relief. Moreover, even though they allege Judge Fox is sued in her "personal capacity"

13

(Compl., ECF 1, ¶ 94), their claims for declaratory and injunctive relief against her fare no better. Like Judge Powell, Judge Fox did not initiate the conservatorship action, played no role in promulgating Act 135, and has no vested interest in defending its constitutionality.

D

To the extent Plaintiffs' claims are premised on 42 U.S.C. § 1983 – i.e., the claims set forth in Counts I, II, and III of their Complaint – they cannot proceed against PCDC, Champagne, Toner or Orphanides & Toner. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Notwithstanding Plaintiffs' conclusory allegation that "Defendants" violated their "rights as guaranteed under the United States Constitution" while "acting under color of law or acting in concert with those whose acts are under color of law," (Compl., ECF 1, ¶ 263), they have not shown PCDC, Champagne, Toner or Orphanides & Toner are anything other than private actors.

Whether a defendant is a state actor, i.e., whether they are "acting under color of state law" depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005). To answer that question, the Court considers whether: (1) a party "exercised powers that are traditionally the exclusive prerogative of the state;" (2) it "acted with the help of or in concert with state officials;" and (3) "the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint

participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

As for Toner and his law firm, "[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999). As for PCDC and Champagne, "merely . . . being on the winning side of" the conservatorship action does not make them co-conspirators or joint actors with the state court. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). "Such a rule would allow almost any aggrieved party to relitigate its claims under the guise of § 1983 . . . ." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 645 (E.D. Pa. 2014), aff'd, 572 F. App'x 68 (3d Cir. 2014). "Bare allegations of conspiracy, or the assertion that Defendants engaged in a concerted action of a kind not likely to occur in the absence of agreement, are insufficient." *Id*. "The standard is even stricter still where the state officials allegedly involved in the conspiracy are immune from suit, as are the state court judges here." *Id*. at 646 (internal quotations, alterations and citations omitted).

E

Plaintiffs' dissatisfaction with the Act 135 conservatorship does not translate into plausible claims against PCDC, Champagne, Toner and Orphanides & Toner for Fraud (Count V), Breach of Fiduciary Duty (Count VI) or a RICO violation (Count VII). To withstand dismissal, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). Plaintiffs' Complaint does not contain enough factual allegations to make any of these claims plausible. At their core, the claims are premised on conclusory accusations that PCDC, Champagne, Toner and Orphanides &

15

Toner have been conspiring with Pennsylvania judges in an "unholy alliance[ ]" to use Act 135 to "amass hundreds of thousands of dollars of illegal profits through extortion, theft, padding bills, improper 'out of court settlements' and misrepresentations." (Compl., ECF 1, ¶ 67; 144-145, 149.)

1

Plaintiffs' fraud claim lacks "sufficient particularity" to comply with Federal Rule of Civil Procedure 9(b). The particularity requirement is "generally considered satisfied when a defendant has 'fair notice' of the charges against it." *U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 316 (E.D. Pa. 2012). "Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *In re Burlington*, 114 F.3d at 1418. Although the Complaint is replete with accusations of dishonest behavior – like "padd[ing] the cost of the conservatorship" (*see, e.g.* Compl., ECF 1, ¶ 287) – it nowhere intelligibly identifies the who, what, when, where and how of any claimed fraud. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (A "plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.") (citation omitted).

2

Plaintiffs' breach of fiduciary duty claim alleges PCDC, Champagne, Orphanides & Toner, and Toner "had a duty" "as court-appointed conservators" "to preserve the historical and structural integrity of Plaintiffs' property while preventing waste and increasing the value." (Compl., ECF 1, ¶ 290.) They allege Defendants "failed to exercise reasonable care in the execution of [their] duties," and, as a result Plaintiffs' "property is in worse condition, and in more debt than at any point in its history."

16

Plaintiffs allegations are nothing more than a formulaic recitation of the elements of their claim, unsupported by enough facts to raise a reasonable expectation that discovery will reveal evidence of any breach of fiduciary duty. *See Twombly*, 550 U.S. at 555-56. They fail to state a plausible claim that PCDC, Champagne, Orphanides & Toner, and Toner had a duty to them or that there was any breach.

3

Plaintiffs' RICO claim fares no better. They allege "PCDC is an enterprise engaged in and whose activities affect interstate commerce" and that Champagne, Orphanides & Toner and Toner "are employed by or associated with it." (Compl., ECF 1, ¶ 295.) They allege PCDC, Champagne, Orphanides & Toner, and Toner "agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs and dozens of state court respondents, defendants and intervenors." (*Id.* ¶ 296.) These allegations do no more than parrot the RICO statute.

Moreover, under 18 U.S.C. § 1961(5), a RICO claim requires at least two occurrences of a predicate act, amounting to a "pattern" of racketeering activity. To allege the required predicate acts Plaintiffs again provide only a formulaic recitation: "Defendants committed multiple related acts of common law fraud, mail fraud, wire fraud and extortion . . . ." (*Id.* ¶ 298.) Then they cite forty-three pages of a document authored by their attorney that is attached to their Complaint as Exhibits C and D. (See Compl., ECF 1 at ECF p. 86-130.) In it, Plaintiffs' counsel pronounces the document "contains information and irrefutable evidence" supporting a RICO claim's existence. (*Id.* at ECF p. 92.) However, the cited exhibits are not the type of "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice

is allowed "only from sources not reasonably subject to dispute." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007), as amended (Nov. 20, 2007). Moreover, Plaintiffs' claims are not "based" on the attorney-authored exhibits to their Complaint in the way that a breach of contract claim might be based on a contract attached as an exhibit to a complaint. "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *In re Burlington*, 114 F.3d at 1426. Plaintiffs' rambling litany of grievances in Exhibits C and D do not plausibly allege a RICO violation.[4]

### F

Non-merits based dismissals, such as a dismissal pursuant to *Younger* are "by definition without prejudice." *Eldakroury v. Att'y Gen. of N.J.*, 601 F. App'x 156, 158 (3d Cir. 2015) (per curiam). In addition, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004); *see also Phillips*, 515 F.3d at 236 ("[A] district court must permit a curative amendment, unless an amendment would be inequitable or futile.") Because no new facts can cure Plaintiff's claims against Judge Fox and Judge Powell, amendment would be futile and they are dismissed with prejudice.

As for Plaintiff's remaining claims, this case is the latest in a long effort to undo the conservatorship at 325 S. 18th Street. Act 135 itself provides Plaintiffs with several avenues for doing just that. *See* 68 Pa. Stat. §§ 1105(f), 1105(i), 1110. Under the

---

[4] Their attempt to do so also violates Federal Rule of Civil Procedure 8 which "'requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.'" *Cohen v. Wagner*, No. 13-674, 2014 WL 199909, at *5 n.5 (E.D. Pa. Jan. 16, 2014) (quoting *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)); *see also* Fed. R. Civ. P. 8.

circumstances, even if *Younger* abstention were not appropriate, it appears unlikely that new facts can cure the defects in Plaintiffs' claims. Nevertheless, because it is not clear that amendment would be futile, the Court dismisses Plaintiffs' claims against PCDC, Champagne, Orphanides & Toner, and Toner.[5]

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***<br>GERALD J. PAPPERT, J.

---

[5] Plaintiffs' Complaint also includes separate counts for "Entitlement to Attorneys' Fees and Court Costs *vis-à-vis* Declaratory and Injunctive Relief" (Count IV) and "Pierce the Corporate Veil" (Count VIII), but neither are cognizable as a stand-alone ground for relief. Count IV is subsumed by Plaintiffs' claims for declaratory and injunctive relief in Counts I, II and III. Count VIII is subsumed by their RICO claim in Count VII.